The document below is hereby signed.

Signed: October 16, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ISIAH FOSKEY, | ) | Case No. 05-01417 |
| | ) | (Chapter 13) |
| Debtor. | ) | For Publication in West's |
| | ) | Bankruptcy Reporter |

MEMORANDUM DECISION RE MOTION REGARDING AUTOMATIC STAY
AS TO POSTPETITION ISSUANCE AND RECORDING OF TAX SALE DEED
<u>PURSUANT TO PREPETITION JUDGMENT FORECLOSING RIGHT OF REDEMPTION</u>

This decision addresses the debtor Isiah Foskey's motion to sell real property (3115 E Street SE, Washington, D.C.) free and clear of liens, and the motion of Plus Properties, LLC ("Plus Properties"), the tax-sale purchaser of the property, for annulment of the automatic stay of 11 U.S.C. § 362(a) or to declare the automatic stay inapplicable.  In reliance on the Superior Court of the District of Columbia having issued a final order prepetition which foreclosed Foskey's right of redemption, Plus Properties made a payment to the District of Columbia and received and recorded a deed to the property.  At a hearing on the motions, I rendered an oral opinion, holding that even if delivery and recording of the tax-sale deed technically violated

the automatic stay, the automatic stay would be annulled *nunc pro tunc* so as to permit the recording of that deed.  As such, I denied Foskey's motion for authority to sell the property free and clear of liens.  This decision concludes that the automatic stay was *not* violated.  It addresses a statutory issue that had been somewhat ambiguous in this district, namely, whether a tax-sale purchaser's completing its payment postpetition pursuant to a prepetition judgment terminating the debtor's right of redemption, the District of Columbia's executing and delivering the deed, or the purchaser's recording that deed violates the automatic stay.

I

Foskey and his wife owned the subject property, but it was sold by the District of Columbia at a tax sale to Plus Properties.  Plus Properties then sued Foskey in the Superior Court of the District of Columbia pursuant to D.C. Code § 47-1370 (2005 Supp.) to foreclose his right of redemption.  On July 20, 2005, the Superior Court entered an Order granting Plus Properties' motion for entry of a default judgment and entered a judgment extinguishing Foskey's right of redemption on the property.

On September 20, 2005, Foskey filed his petition commencing this case.  Subsequently, with a 30-day statutory period for its performance running, Plus Properties paid the taxes owed on the

property to the District of Columbia, a prerequisite to obtaining title pursuant to D.C. Code § 47-1382. Pursuant to that same statute and pursuant to the command of the Superior Court's judgment, the Mayor then executed and delivered a deed to Plus Properties. Plus Properties recorded that deed in March 2006.

Foskey asserts that these postpetition acts violated the automatic stay of 11 U.S.C. § 362(a) and were thus void, and filed a motion for authority to sell the property free and clear of any liens. Plus Properties filed a motion to annul the automatic stay, 11 U.S.C. § 362(a), or to declare that it was inapplicable.[1] The District of Columbia has appeared in this matter to advance arguments in support of Plus Properties' positions. For ease of discussion I will refer to these two parties' arguments as though they were advanced by Plus Properties alone.

---

[1] In an order entered on June 12, 2007 but later vacated, I denied debtor's motion to sell the property and dismissed Plus Properties' motion as moot by declaring that the automatic stay did not apply to Plus Properties' postpetition acts. This latter determination was based on the erroneous belief that the final judgment foreclosing the right of redemption issued by the Superior Court meant that no further action was required of the District or Plus Properties to confer fee simple title on Plus Properties. (*See* Dkt. No. 132, p. 2.) Accordingly, on the debtor's motion to reconsider, I agreed that the order of June 12, 2007, would not be effective if I concluded it should be ineffective after I held a new hearing.

II

Whether the automatic stay was violated is dependent upon what interest in the property, if any, was held by the estate, and whether any of the postpetition acts at issue were acts to collect a prepetition debt.  What interest in property the estate held is dependent upon what property interest Foskey possessed, under the D.C. Code, when he filed for bankruptcy.  The tax-sale and foreclosure process under the D.C. Code is as follows.

The D.C. Mayor has the authority, after satisfying various requirements, *see* D.C. Code § 47-1340-1342, to auction off a property based upon the delinquency of tax payments.  The prevailing bidder at the auction, however, does not immediately gain title.  Following the sale, there is a six-month waiting period in which time the original owner of the property has a right of redemption, in which he retains ownership and use of the property, and in which he can cure the tax delinquency. *See* D.C. Code § 47-1370(a).  At any time after that six-month period, the purchaser can file a complaint in the D.C. Superior Court to foreclose the original owner's right of redemption.  *Id.*  Here, Plus Properties, the tax-sale purchaser, filed such a complaint and, on July 20, 2005, the Superior Court granted default judgment, foreclosing the debtor's right of redemption.  *See* D.C. Code § 47-1370(d) ("The right of redemption shall continue until a judgment foreclosing the right of redemption becomes final.")

Legal title, however, does not vest in the tax sale purchaser by reason of the final judgment. Such a final judgment, foreclosing the right of redemption:

> shall direct the Mayor to execute and deliver a deed to the purchaser in fee simple on payment to the Mayor of the amount required under this section. No deed shall be executed before such payment is received. The final judgment shall direct the Mayor to enroll the purchaser in fee simple as the owner of the real property.

D.C. Code § 47-1382(a). Until the deed is transferred in this manner, the original owner still holds legal title and is entitled to use of the property, but the legal title is subject to divestment upon payment of the purchase price and issuance of a deed.

Here, Foskey filed for bankruptcy after the Superior Court issued its final judgment of foreclosure, but before Plus Properties paid the amount due on the property, before the Mayor issued the deed, and before Plus Properties recorded the deed. Thus, at the time of these latter acts, the automatic stay of 11 U.S.C. § 362(a) had arisen in this case. In part, the automatic stay bars certain acts against property of the estate. Pursuant to 11 U.S.C. § 362(a)(2),(3),(4), the automatic stay precluded, respectively, "the enforcement against . . . property of the estate, of a judgment obtained before the commencement of the case," "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to . . . enforce any lien against

5

property of the estate." The first question, then, is whether the postpetition acts of Plus Properties and the District directed against the real property were acts against property of the estate. A second question is whether the postpetition acts violated the bar of 11 U.S.C. § 362(a)(6) against collection of a prepetition debt.

A.

Foskey argues that he still had an interest in the property that became property of the estate under 11 U.S.C. § 541, and that the automatic stay of § 362(a) applied here based on *Flowers v. Washington Fed. Sav. Bank (In re Flowers)*, 94 B.R. 3, 8 (D.C. Bankr. 1988), which held that when the trustees under a deed of trust issued a deed *postpetition* to a *prepetition* non-judicial foreclosure sale purchaser, that act violated the automatic stay. But because no judgment had issued upholding the effectiveness of that foreclosure sale, *In re Flowers*, even if correctly decided, is distinguishable as discussed below.

Unless there was some defect in the foreclosure sale, the debtor in *In re Flowers* no longer retained a right of redemption whereby the debtor could prevent the purchaser from obtaining title. *See id.* at 7-8. The court implicitly adopted the rationale that the automatic stay nevertheless applied because the sale's validity was still subject to challenge. *See also In re Simcock*, 152 B.R. 7, 9-10 (Bankr. D. Me. 1993) (adopting a

6

similar rationale).  Other courts have concluded differently. *See In re Hazelton*, 137 B.R. 560 (Bankr. D.N.H. 1992); *Rodgers v. County of Monroe* (*In re Rodgers*) 333 F.3d 64, 68 (2d Cir. 2003) ("we agree with the bankruptcy court that, in the context of either a tax or mortgage foreclosure, under New York law, 'once the ability to redeem has been lost pre-petition, the foreclosed property sold at a public sale is no longer property of the estate for purposes of Section 541.'")  Because the propriety of a nonjudicial foreclosure sale had not been upheld by a judgment in *In re Flowers*, and theoretically was subject to challenge, that may justify the conclusion in *In re Flowers* that the debtor in that case continued to possess an ownership interest in the property, albeit only a shadow of his former rights, such that the automatic stay barred postpetition issuance of a trustee's deed.  Such a prophylactic approach assures the debtor breathing room in the midst of the debtor's reorganization efforts to consider and pursue any such options, and the foreclosure sale arguably cannot be deemed a completed process

because the sale is still subject to challenge.[2]  But I need not decide whether *In re Flowers* was correctly decided under that rationale.

In this case, in contrast to *In re Flowers*, a judgment had already issued adjudicating that the debtor's right of redemption no longer existed.  Foskey continued to hold legal title and enjoy use of the property despite Plus Properties' tendering payment.  The Mayor, pursuant to D.C. Code § 47-1382(a), executed and delivered to Plus Properties a deed upon payment, thus divesting Foskey of legal title and of his right to enjoy use of the property.  But those acts did not violate the automatic stay with respect to acts against property of the estate.  The tax judgment conclusively ended Foskey's right of redemption, and left Foskey with no equitable rights in the property as against Plus Properties if the latter elected to pay the tax-sale purchase price.  Further, D.C. Code § 47-1382(a) empowered the

---

[2] On the other hand, a purchaser at a *valid* foreclosure sale could argue that the debtor's equitable ownership interest was at an end, leaving only bare legal title that was subject to divestment upon the purchaser performing on its purchase contract, such that (under the later reasoning of this decision) the automatic stay was not violated.  Of course, a purchaser at a prepetition foreclosure sale faces the risk that the sale was *not* valid, and if it were determined to be invalid, the purchaser's postpetition act of obtaining title to the property *would* violate the automatic stay.  Even if completing a *valid* prepetition foreclosure sale would be held not to have violated the automatic stay, the uncertainty as to whether the sale would be declared valid may lead purchasers at foreclosure sales playing it safe by seeking relief from the automatic stay.

8

District to convey the legal and equitable title to the property to Plus Properties upon payment of the purchase price. Foskey's rights were limited to a legal title (and the use of the property during the period he held legal title) that was subject to divestment upon Plus Properties performing on its purchase contract. That conditional legal title (and the incidental right to use the property) was not interfered with by Plus Properties' performing on the contract and the District's conveying title to Plus Properties.

In contrast to *In re Flowers*, in the case of a judicial decree in a District of Columbia tax sale foreclosing the debtor's right of redemption, the debtor's ability under District of Columbia law to prevent the purchaser from completing the sale and obtaining the issuance of a deed is limited to a challenge to jurisdiction over his or her person or an appeal of the judgment (or a motion for the Superior Court to reconsider that judgment). Until vacated, the Superior Court's judgment (unless void for lack of jurisdiction over the debtor) is entitled to full faith and credit by this court unless set aside by the Superior Court or reversed on appeal. Foskey does not assert that the Superior Court lacked jurisdiction over his person in entering the default judgment against him, and the judgment was not stayed.

Accordingly, upon the filing of the petition, Foskey's interests in the property were subject to Plus Properties' right

to make payment of the purchase price and to obtain the Mayor's ministerial issuance of a deed by reason of such payment. He no longer enjoyed the right to redeem the property from the foreclosure process and thereby to prevent Plus Properties' acquisition of the property. He continued to be the owner of title and to occupy the property until those events occurred, but those rights were conditional rights that were subject to being terminated by Plus Properties' completing payment of its tax sale bid and an ensuing ministerial issuance to it of a deed.

Upon filing of bankruptcy, the estate possesses "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). Because the estate cannot possess greater rights or interest in the property than those held by the debtor upon filing, the bankruptcy estate possesses only that limited bundle of post-sale rights. *See In re Alpine PCS, Inc.*, 2008 WL 5076983, *4 (Bankr. D.D.C. Oct. 10, 2008) ("A debtor's property rights do not expand upon the commencement of a case."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy - no more, no less.") The automatic stay only protects that limited bundle of rights.

Here, Foskey's interest in the property upon filing of bankruptcy was subject to Plus Properties' right, under the

Superior Court's final judgment, to deposit payment towards its purchase of the property,[3] and to have the District convey the legal title to it.  Accordingly, the automatic stay was not violated.

*In re Rodgers*, 333 F.3d at 68, held that when a debtor files a petition after a tax sale at public auction, but before completion of payment and delivery of the deed, the debtor has lost her ability to redeem the property and no longer possesses "legal or equitable interests" in the property, so that the property is not property of the estate for purposes of 11 U.S.C. § 541, and thus is not protected by the automatic stay.  This is an even stronger case for holding that the automatic stay did not bar issuance of the deed because a judgment, binding on Foskey and to which this court must give full faith and credit, has *adjudicated* that Foskey no longer had a right of redemption, and changed his ownership from one of full title to one of title subject to divestment upon Plus Properties' making payment. Unlike the grant under 11 U.S.C. § 365 to a bankruptcy trustee of the right to reject executory contracts of sale, the Bankruptcy

---

[3]  Even under the reasoning of *In re Flowers*, if the property were treated as property of the estate protected by the automatic stay, Plus Properties' act of making payment would not have violated the automatic stay.  The act would be merely the unilateral act of Plus Properties' performing its obligations under that contract of purchase, and in effect making a deposit in order that it would be entitled to have the District convey the property once the stay was lifted to permit such conveyance.

11

Code grants no right to undo a Superior Court tax sale judgment terminating the debtor's right of redemption.  Under the Superior Court's judgment, Foskey's ability to regain a right to redeem the property was limited to hoping that Plus Properties would neglect to make payment to the District and become entitled to a deed.  Under the Superior Court's judgment, he no longer had any right to challenge the tax sale.

Unlike *In re Flowers*, where the sale was subject to challenge, the issuance of the deed here was dictated by D.C. Code § 47-1382(a), which, affording no discretion, commands the Mayor of the District of Columbia to execute and deliver the deed "on payment."  There is a string of cases, upon which Plus Properties relied, stating that "ministerial acts," which are governmental actions that are compelled by statute to be performed and provide no discretion in doing so, do not violate an automatic stay.  *See*, *e.g.*, *In re Rodgers*, 333 F.3d at 69; *Soares v. Brockton Credit Union* (*In re Soares*), 107 F.3d 969, 973-74 (1st Cir. 1997) ("A ministerial act is one that is essentially clerical in nature.  Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial." (citations omitted)).  From the language of D.C. Code § 47-1382(a), it is clear that the execution of the deed,

12

once payment is made, is a ministerial action.

But it is unnecessary to decide this case based on the "ministerial act" doctrine. My limited research suggests that the doctrine initially arose in the context of the stay of § 362(a)(1) barring an act to continue a prepetition judicial proceeding against the debtor, and held that a clerk's ministerial act of entering a judgment pursuant to a judge's prepetition decision of a matter does not violate the automatic stay.[4] That research further leads me to believe that even those courts that follow the ministerial acts exception recognize that when the judgment would effect a transfer of title to property of the estate, the ministerial act of entering a judgment postpetition is ineffective to transfer title. *Musso v. Ostashko (In re Ostashko)*, 468 F.3d 99, 107 n.2 (2d Cir. 2006),

---

[4] With respect to a clerk's postpetition entry of a judgment pursuant to a court's prepetition decision directing the entry of a judgment, I have doubts regarding the propriety of applying the ministerial acts exception to the automatic stay in § 362(a)(1) of continuation of proceedings against the debtor. Prior to the clerk's entering a judgment, a judge is free to change her mind and revise her ruling. But after the filing of the debtor's bankruptcy petition, the judge would be stayed from revising her ruling and withdrawing her direction to the clerk to enter a judgment (because the revision of her ruling and her direction to the clerk would be a judicial function and thus a postpetition continuation of the judicial proceeding), yet the clerk's entry of the judgment would not be barred by the stay. The response may be that ministerial act doctrine only leads to a judgment in the judicial proceeding, and that although the proceeding is otherwise stayed, the litigants are free to obtain a lifting of the stay to permit the judge to revise her ruling, and thus no harm arises from having permitted only the clerk to act.

distinguishing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994).  Accordingly, without further research, it would be dangerous for me to assume that the "ministerial act" doctrine extends to an act that divests the debtor of title.

Instead of relying on that doctrine, I elect to decide this case on a more straightforward basis.  The deed here did not impair title to property of the estate.  Although a debtor may retain some incidents of ownership after entry prepetition of a District of Columbia tax sale judgment (for example, a limited right of possession), the delivery of the deed does not impair any of the debtor's rights as the debtor's previous full ownership of the property had been converted by the judgment to a right of enjoyment subject to divestment by way of the purchaser's exercising its rights under its purchase commitment. *See In re Rodgers*, 333 F.3d at 69.

Holding that the granting of the deed in *In re Flowers* violated the automatic stay may have conformed with the purpose of the automatic stay by providing the debtor breathing room to evaluate and pursue his or her options and rights with respect to the foreclosure sale (including any challenge to the validity of the foreclosure sale).  Here, in contrast, Foskey had no options

left: they were all foreclosed by the Superior Court's judgment.[5] Because the transfer of the deed ultimately had no effect on the property of the estate, the District's issuance of the deed was not a violation of the stay under § 362.

B.

To the extent that I reasoned in *In re Flowers*, 94 B.R. at 8, that the postpetition issuance of a deed "constitutes a step, albeit minor and perfunctory, in the completion of the collection process," that reasoning cannot be applied here to treat the issuance of the deed to Plus Properties as an act to collect the debt in violation of § 362(a)(6).  Plus Properties' act of making payment did not violate the automatic stay of § 362(a)(6) against collection of a prepetition debt as it was its right to complete its tax sale contract of purchase, and the Superior Court judgment had adjudicated the effectiveness of that sale prepetition.  In turn, the issuance of the deed was compliance with the obligation to issue a deed if payment were made, not an act itself to collect the debt: the tax sale, and the Superior

---

[5] Nevertheless, a purchaser at a tax sale who obtains a judgment from the Superior Court purporting to terminate the debtor's right of redemption, and who procures and records a deed incident to the judgment, may run afoul of the automatic stay if the Superior Court judgment is void for failure to have obtained jurisdiction over the debtor (by reason of improper service). Accordingly, such purchasers proceed at their own risk.  But the theoretical possibility that a debtor may challenge the judgment for lack of proper service is no reason to adopt a prophylactic rule that the automatic stay applies.

15

Court proceeding, were the acts to collect the debt.[6]

C.

Foskey asserts in passing that there is a possibility he would regain his right of redemption through operation of D.C. Code § 47-1382(f). (Dkt. No. 134, Memorandum, p. 6.) Based on that provision, he contends that he has a continuing property interest even after the deed was issued. Foskey could regain his right of redemption in two ways: Plus Properties could either (1) fail to pay the amount due on the property within 30 days of the final judgment or (2) pay but fail to record the deed within 30 days. In either case, for Plus Properties to be stripped of any interest in the property, Foskey would then need to file a motion to have the final judgment vacated and the Superior Court, in its discretion, would need to grant that motion. *See* D.C. Code § 47-1382(f). As a result of a voiding of the final judgment of foreclosure, Foskey's original right of redemption would be restored. But his interest in the property was an interest that was subject to divestment by Plus Properties' making payment and the District's issuing title to Plus Properties, and his right to attempt to invoke his rights under § 47-1382(f). The District

---

[6] Even in *In re Flowers*, it would probably have been error (at least if the foreclosure sale was valid) to treat the issuance of the deed as an act to collect the debt (even though the deed reflected that collection had been accomplished) as the foreclosure sale already resulted in a contract of purchase, and upon the purchaser's making payment, the issuance of the deed would merely be the act of complying with that contract.

16

and Plus Properties have not taken any act against that interest in the property, and thus have not violated the automatic stay.

Moreover, § 47-1382(f) protects the rights of the District of Columbia to payment for the property and to quiet title (which provides resolution as to whom is liable for property taxes and in relation to other ownership liabilities).  The District has joined in Plus Properties' effort to defend or permit the transfer of the deed despite, as Foskey asserts, Plus Properties' payment and recording of the deed being late.  Foskey has given no reason why the Superior Court would thus be inclined to grant a motion to vacate its foreclosure judgment; to the extent Foskey wishes to pursue relief in the Superior Court, as previously ordered, the automatic stay has been and remains lifted to allow the parties to pursue such rights as they may have in the D.C. Superior Court litigation, including any appeals.

III

Because Mr. Foskey's interest in the property was subject to Plus Properties' right of payment and because the subsequent transfer and recordation of the tax deed had no effect on the interest Mr. Foskey retained after the foreclosure of his right of redemption, the postpetition acts of the District and Plus Properties were not in violation of the stay.  An order follows.

[Signed and dated above.]

17

Copies to: Debtor; Debtor's attorney; Chapter 13 Trustee; Carol Blumenthal, Esq. (counsel for Plus Properties); David Fisher, Assistant Attorney General for the District of Columbia; Joseph F. Ferguson, Jr., Assistant Attorney General for the District of Columbia.